Alice J. Ahn (SBN 271399)
alice.ahn@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
50 California Street
San Francisco, California 94111
Telephone: (628) 235-1000

Mark D. Selwyn (SBN 244180)
mark.selwyn@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6100

Joseph Mueller (*pro hac vice* forthcoming)
joseph.mueller@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000

Christopher R. Noyes (*pro hac vice* forthcoming)
christopher.noyes@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800

Attorneys for Plaintiffs SK HYNIX INC. and SK HYNIX AMERICA INC.

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

SK HYNIX INC. and SK HYNIX AMERICA INC.,

Plaintiffs,

v.

LONGHORN IP LLC and MAGO BARCA IP LLC,

Defendants.

Case No. 3:26-cv-11609

COMPLAINT FOR DECLARATORY JUDGMENT

DEMAND FOR JURY TRIAL

Plaintiffs SK hynix Inc. and SK hynix America Inc. (collectively, "Plaintiffs" or "SK hynix") file this Complaint for Declaratory Judgment against Defendants Longhorn IP LLC ("Longhorn IP") and Mago Barca IP LLC ("MBIP") (collectively, "Defendants"). By and through this Complaint, SK hynix seeks a declaration that SK hynix does not directly or indirectly infringe United States Patent Nos. 7,932,608 ("'608 patent"), 8,390,125 ("'125 patent"), 9,177,914 ("'914 patent"), 9,530,690 ("'690 patent"), 9,984,971 ("'971 patent"), 8,334,170 ("'170 patent"), 11,410,877 ("'877 patent"), and 9,570,324 ("'324 patent") (collectively, the "Patents-in-Suit"), either literally or under the doctrine of equivalents, and that claims of the '608, '125, '914, '690, '971, '170, and '877 patents are invalid under at least 35 U.S.C. §§ 102 and 103.

## NATURE OF THE ACTION

1. This is an action for a declaratory judgment of non-infringement of the Patents-in-Suit and invalidity of the '608, '125, '914, '690, '971, '170, and '877 patents pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and the patent laws of the United States, Title 35 of the United States Code.§

2. Plaintiffs request this relief based on Defendants' infringement assertions and licensing demands to SK hynix, in which Defendants have accused SK hynix Inc. and its "subsidiaries" and "affiliates" of infringing the Patents-in-Suit and made repeated unreasonable demands that SK hynix take a license to a patent portfolio that includes the Patents-in-Suit.

3. An actual and justiciable controversy therefore exists between SK hynix and Defendants concerning the Patents-in-Suit under 28 U.S.C. §§ 2201–2202 and as to whether SK hynix's products infringe any valid claim of the Patents-in-Suit.

## THE PARTIES

4. SK hynix Inc. is a corporation organized and existing under the laws of the Republic of Korea, with its principal place of business at 2091, Gyeongchung-daero, Bubal-eub Icheon-si, Gyeonggi-do, South Korea. Founded in 1983 as Hyundai Electronics Co., Ltd., SK hynix Inc. is one of the world's leading semiconductor companies and a global supplier of advanced memory technologies, including dynamic random-access memory ("DRAM") and

high-bandwidth memory ("HBM"). SK hynix Inc. has a substantial U.S. patent portfolio, reflecting years of research, development, engineering, and investment in memory and related technologies.

5. SK hynix America Inc. is a corporation organized and existing under the laws of the State of California, with its principal place of business at 3101 North First Street, San Jose, California 95134. SK hynix America Inc. is a wholly owned subsidiary of SK hynix Inc. and conducts business in the U.S. SK hynix America Inc. is responsible for the marketing, sales, customer engagement, and commercialization of SK hynix Inc.'s products in the U.S.

6. On information and belief, Longhorn IP is a limited liability company existing under the laws of the state of Texas having its principal place of business at 8105 Rasor Boulevard, Suite 210, Plano, Texas 75024-0340. Longhorn IP is a privately-owned IP management and patent portfolio licensing company, which engages in efforts to license the patent portfolios of MBIP, among others. Tanit Ventures, Inc. ("Tanit"), a corporation existing under the laws of the state of Texas, is the sole member of Longhorn IP. Khaled Fekih-Romdhane is the sole director and President of Tanit.

7. On information and belief, MBIP is a limited liability company existing under the laws of the state of Texas having its principal place of business at 8105 Rasor Boulevard, Suite 210, Plano, Texas 75024-0340. MBIP, an affiliate of Longhorn IP, is a non-practicing entity. Mr. Fekih-Romdhane is the sole member and director of MBIP.

## **<u>JURISDICTION AND VENUE</u>**

8. This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and under the patent laws of the United States, Title 35 of the United States Code.

9. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a), 2201(a), 2202, and the patent laws of the United States, 35 U.S.C. § 1 *et seq*.

10. An immediate, real, and justiciable controversy exists between SK hynix and Defendants as to whether SK hynix has infringed the Patents-in-Suit. As described in detail below (*see* ¶¶ 52-59), this controversy arises out of Defendants' baseless infringement assertions and licensing demands to SK hynix, in which Defendants have accused SK hynix Inc. and its

subsidiaries and affiliates of infringing the Patents-in-Suit, and claimed that SK hynix requires a license to MBIP's patent portfolio.[1] SK hynix accordingly requests a judicial determination of its rights regarding the Patents-in-Suit. Because this action presents an actual controversy with respect to the Patents-in-Suit, the Court may grant the declaratory relief sought pursuant to 28 U.S.C. § 2201 *et seq*.

11. This Court has personal jurisdiction over Defendants by virtue of their sufficient minimum contacts with this forum. Defendants, directly or through their agents and alter egos, have regularly conducted business activities in California and directed their activities at residents in this District, including SK hynix America Inc., and this action arises out of and relates to such activities.

12. Among other things, Defendants purposefully directed allegations of patent infringement to SK hynix Inc. and its subsidiaries and affiliates, including SK hynix America Inc., which is incorporated in California and resides in this District. SK hynix America Inc. provides technical support, marketing, and sales activities in the United States, including for customers headquartered in this District, with respect to the allegedly infringing SK hynix HBM and DRAM products. Since June 2025, Longhorn IP and MBIP have directed their enforcement activities at SK hynix, beginning with sending a letter to SK hynix Inc. on June 11, 2025 asserting that SK hynix Inc. and its "subsidiaries" and/or "affiliates" infringe multiple U.S. patents allegedly owned by MBIP by selling, offering to sell, and importing into the U.S. purportedly infringing products. *See* ¶¶ 52-59.

13. The allegations in the June 11, 2025 letter and in subsequent negotiations and communications described herein (¶¶ 52-59) directly implicate the activities of SK hynix America Inc. in this District with respect to the allegedly infringing SK hynix products. Longhorn IP and MBIP made these infringement allegations and license demands with the goal of extracting licensing fees from SK hynix Inc. and its subsidiaries and affiliates, including SK hynix America Inc. As explained above, Defendants expressly directed their infringement

[1] Out of an abundance of caution, Plaintiffs do not rely herein on any communications or information subject to any non-disclosure agreement.

allegations against SK hynix and its "subsidiaries" and/or "affiliates." Defendants further made licensing demands based on U.S. sales, thus directly implicating SK hynix America Inc. *See* ¶¶ 52-59.

14. Further, Defendants knew or should have known that the accused U.S. activities necessarily implicate SK hynix America Inc. Not only is the existence of SK hynix America Inc., its location in this District, and its status as a wholly owned subsidiary of SK hynix Inc. a publicly known fact, Longhorn IP's affiliated entities—Trenchant Blade Technologies LLC ("Trenchant") and Hamilcar Barca IP LLC ("Hamilcar Barca")—have previously entered into patent license agreements with SK hynix Inc. that expressly included SK hynix America Inc. as a party. Mr. Fekih-Romdhane was involved in those negotiations and executed the agreements on behalf of Longhorn IP and/or its various affiliates. Thus, Defendants knew or should have known that their enforcement activities against SK hynix Inc. and its "subsidiaries" and "affiliates"—which included allegations of infringement based on U.S. activities—are necessarily directed to SK hynix America Inc., which is incorporated in California and resides in this District.

15. Longhorn IP and MBIP also availed themselves of this District by retaining counsel who works from offices in this District to represent them in their enforcement activities of the Patents-in-Suit against SK hynix. *See* ¶ 58.

16. This declaratory judgment action arises out of and relates to the letters, communications, and subsequent negotiations described herein (¶¶ 52-59) because Defendants engaged in these activities to assert the alleged patent rights that are the subject of this Complaint.

17. Further, Defendants purposefully availed themselves of this District by engaging in business activities within the District to obtain the Patents-in-Suit. Defendants' business model includes licensing and obtaining patent rights through litigation. In furtherance of this business model, MBIP acquired the Patents-in-Suit pursuant to a litigation settlement agreement resulting from a lawsuit between TSMC and Longhorn IP that occurred in this District, and then shortly thereafter began enforcing the patents against SK hynix. *See* ¶¶ 41-59. On information

and belief, the agreement resulting in MBIP's acquisition of the Patents-in-Suit includes a California choice of law clause. In sum, Defendants purposefully availed themselves of the benefits and legal protections of this District by negotiating and entering into an agreement in this District to acquire the Patents-in-Suit, which has enabled Defendants' patent enforcement campaign against SK hynix Inc. and its subsidiaries and affiliates, including SK hynix America Inc.

18. This declaratory judgment action arises out of and relates to Defendants' business activities in obtaining the Patents-in-Suit because those activities enabled Defendants' licensing assertions against SK hynix and allowed Defendants to assert the patent rights that are the subject of this Complaint.

19. Further, Longhorn IP and its commonly controlled, affiliated entities have repeatedly directed concerted activities toward this District in furtherance of a patent acquisition, licensing, and assertion scheme run and managed by a single individual: Mr. Fekih-Romdhane. On information and belief, Mr. Fekih-Romdhane controls Longhorn IP through Tanit; Mr. Fekih-Romdhane is Tanit's sole Director and President, and Tanit is the sole member of Longhorn IP. Longhorn IP's pattern and practice is to (1) negotiate agreements with third parties to acquire patents; (2) form holding companies ("affiliates" or "portfolio" entities) incorporated in the State of Texas that ultimately acquire and hold title to patents purchased from third parties; (3) establish a "management agreement" between Longhorn IP and each holding company that authorizes Longhorn IP to "manage" the portfolio (e.g., by engaging in patent licensing and enforcement on behalf of the holding company); and (4) seek to extract royalties from companies in the relevant industries and, if necessary, bring patent infringement lawsuits filed in the name of the applicable holding company. Longhorn IP announces and advertises such activities on its website, www.longhornip.com/news and www.longhornip.com/blog. On information and belief, while Longhorn IP and its various holding companies are, on paper, distinct corporate entities (https://www.longhornip.com/portfolios), Longhorn IP—through its principals—manages and controls all the activities of its portfolio entities, ranging from broad policy decisions to routine matters of day-to-day operation.

20. On information and belief, Mr. Fekih-Romdhane is the Founder, CEO, and President of Longhorn IP, and his role includes managing patent acquisitions, licensing negotiations, and conducting settlement discussions.

21. On information and belief, Mr. Fekih-Romdhane is the common representative of Longhorn IP's affiliated entities, and he acts and negotiates on their collective behalf. For example, Mr. Fekih-Romdhane uses Longhorn IP letterhead and his Longhorn IP email address when communicating on behalf of Longhorn IP's alter ego entities, including MBIP.

22. On information and belief, Mr. Fekih-Romdhane manages and controls MBIP, and MBIP has no employees of its own. For example, both Longhorn IP and MBIP are registered to do business at 8105 Rasor Boulevard, Suite 210, Plano, Texas 75024-0340.

23. On information and belief, MBIP executed a "licensing service agreement" with Longhorn IP to act as its agent to monetize its patents. On information and belief, the licensing service agreement between MBIP and Longhorn IP was not an arm's-length transaction.

24. On information and belief, Longhorn IP's affiliated entities, including MBIP, are alter egos of Longhorn IP. Longhorn IP dominates and controls the actions of its affiliated entities and, specifically, directs and controls their patent enforcement activities. Longhorn IP's affiliated entities do not appear to have separate websites, and are identified on Longhorn IP's website, www.longhornip.com, merely as "Portfolio" entities holding IP assets for the benefit of Longhorn IP.

25. On information and belief, Longhorn IP's affiliated entities, including MBIP, are insufficiently capitalized to pay any judgments against them and/or have assets that are commingled with those of Longhorn IP. For example, Longhorn IP's press releases suggest that revenues from licensing transactions and settlements involving the portfolio entities are recognized by Longhorn IP. *See, e.g.*, Longhorn IP, *Longhorn IP Celebrates Its Six Year Anniversary With Several New Licenses And A Revenue Milestone* (May 3, 2022), https://www.longhornip.com/post/longhorn-ip-celebrates-its-six-year-anniversary-with-several-new-licenses-and-a-revenue-milestone ("In April, several new licenses were concluded on behalf

of our affiliates, both in the semiconductor division as well as in the wireless technologies' division. We also hit a new revenue milestone.").

26. Disregarding the fact that Longhorn IP and MBIP are alter egos of each other would result in fraud or injustice.

27. For example, on information and belief, Mr. Fekih-Romdhane and Longhorn IP create entities for the purpose of assigning intellectual property rights, widely licensing such rights, and bringing infringement suits by and through its affiliated entities. Longhorn IP has created its affiliated entities to allow its alter egos to assert infringement claims nationally or globally while attempting to limit or insulate itself and its affiliated entities from being subject to personal jurisdiction outside of Texas. Further, Longhorn IP creates entities such as MBIP to circumvent patent license agreements entered into between prior licensees and different Longhorn IP entities; Longhorn IP forms these alter egos to allow Longhorn IP to repeatedly assert newly acquired patents against prior licensees, including SK hynix. *See* ¶¶ 41-52.

28. Longhorn IP and its affiliated entities have repeatedly accused companies residing in this District of patent infringement. For example, Katana previously brought an action for patent infringement against Taiwan Semiconductor Manufacturing Company, Ltd. and two of its California subsidiaries residing in this District, TSMC North America, Inc. and TSMC Technology, Inc. (collectively, "TSMC"), in the U.S. District Court for the Western District of Texas. *See Katana Silicon Techs., LLC v. Taiwan Semiconductor Mfg. Co. Ltd.*, No. 6:19-cv-00695 (W.D. Tex. filed Dec. 6, 2019). As part of the settlement, Longhorn IP announced an IP collaboration and service agreement with TSMC that, on information and belief, establishes an ongoing relationship between TSMC and Longhorn IP in this District. The collaboration agreement between TSMC and Longhorn IP is governed by California law and requires that disputes arising from it are heard in federal and state courts in Santa Clara County. *See* Intell. Prop. Collaboration & Servs. Agreement § 5.1, *Taiwan Semiconductor Mfg. Co. Ltd. et al. v. Longhorn IP LLC et al.*, No. 5:23-cv-04265-PCP (N.D. Cal. June 28, 2024), Dkt. No. 95-1. On information and belief, Longhorn IP subsequently renewed the IP collaboration and services agreement with TSMC as a result of another lawsuit within this District. *Taiwan Semiconductor*

*Mfg. Co. Ltd. et al. v. Longhorn IP LLC et al.*, No. 5:23-cv-04265-PCP (N.D. Cal.); *see also* ¶¶ 48-51. On information and belief, the renewed IP collaboration and services agreement was entered into in this District, which led to MBIP's acquisition of the Patents-in-Suit. ¶¶ 48-51.

29. Further, Longhorn IP, by and through its affiliate Lone Star, filed lawsuits in this District in 2017 against STMicroelectronics, Inc., No. 3:17-cv-07206, and in 2018 against Micron Technology, Inc., No. 3:18-cv-01680. In addition, Lone Star consented to the transfer of cases to this District from the U.S. District Court for the Eastern District of Texas on several occasions. *See* Joint Mot. & Stip. Transfer Venue, *Lone Star Silicon Innovations LLC v. Renesas Elecs. Corp.*, No. 3:17-cv-03981 (N.D. Cal. July 13, 2017), Dkt. No. 43; Defs.' Opposed Mot. Transfer, *Lone Star Silicon Innovations LLC v. Semiconductor Mfg. Int'l Corp.*, No. 3:17-cv-03980 (N.D. Cal. Apr. 7, 2017), Dkt. No. 25; Pls.' Resp. UMC's Suppl. Brief Supp. Mot. Dismiss, *Lone Star Silicon Innovations LLC v. United Microelectronics Corp.*, No. 3:17-cv-04033 (N.D. Cal. June 22, 2017), Dkt. No. 28; Joint Mot. & Stip. Transfer Venue, *Lone Star Silicon Innovations LLC v. Toshiba Corp.*, No. 3:17-cv-04034 (N.D. Cal. July 13, 2018), Dkt. No. 153; Pls.' Resp. Nanya's Suppl. Brief Supp. Mot. Dismiss, *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, No. 3:17-cv-04032 (N.D. Cal. June 19, 2017), Dkt. No. 28. On information and belief, Longhorn IP representatives traveled to California for these matters in furtherance of their patent licensing business.

30. Defendants and their agents and alter egos have charged infringement and threatened litigation against numerous companies residing and conducting business in this District. For example, Defendants sent a patent assertion letter to at least Samsung Electronics Co., Ltd. ("Samsung") and Intel Corporation ("Intel") alleging that Samsung and Intel each infringe patents owned by one of Longhorn IP's affiliates, Trenchant Blade. As a result, Samsung filed a declaratory judgment action in this District. *See* Compl. for Declaratory J., *Samsung Elecs. Co. v. Trenchant Blade Techs. LLC*, No. 3:20-cv-08205 (N.D. Cal. Nov. 20, 2020), Dkt. No. 1. In that complaint, Samsung alleged that, prior to filing the complaint, Samsung and Mr. Fekih-Romdhane engaged in licensing negotiations that included Samsung representatives participating from this District. Likewise, Intel also filed a declaratory judgment

action in this District. *See* Compl. for Declaratory J., *Intel Corp. v. Trenchant Blade Techs. LLC*, No. 3:21-cv-3398 (N.D. Cal. May 6, 2021), Dkt. No. 1. In that complaint, Intel alleged that, prior to filing the complaint, Intel and Mr. Fekih-Romdhane engaged in licensing negotiations that included Intel representatives participating from this District. In the *Samsung* declaratory judgment action, the Court denied a motion to dismiss for lack of personal jurisdiction filed by Longhorn IP and Trenchant Blade, and held that "[t]he Court clearly has personal jurisdiction over the defendants." Order Denying Mot. Dismiss at 1, *Samsung*, No. 3:20-cv-08205 (N.D. Cal. June 24, 2021), Dkt. No. 55.

31. Venue is proper in this District under 28 U.S.C. §§ 1391(b)–(c) at least because a substantial part of the events giving rise to the claims presented in this Complaint occurred in this District and Defendants are subject to personal jurisdiction in this District.

## DIVISIONAL ASSIGNMENT

32. Pursuant to Civil L.R. 3-2(c) and 3-5(b), this is an Intellectual Property Action subject to assignment on a district-wide basis.

## FACTUAL ALLEGATIONS

### PATENTS-IN-SUIT

33. The '608 patent is entitled "Through-Silicon Via Formed With a Post Passivation Interconnect Structure." The '608 patent states on its cover that it was issued on April 26, 2011, and names as its inventors Ming-Hong Tseng of Toufen Township, Taiwan, and Sheng Huang Jao of Jiayi, Taiwan. The '608 patent also states that the initial assignee of the '608 patent was Taiwan Semiconductor Manufacturing Co., Ltd. of Taiwan. MBIP purports to own by assignment the '608 patent. A copy of the '608 patent is attached hereto as Exhibit A.

34. The '125 patent is entitled "Through-Silicon Via Formed With a Post Passivation Interconnect Structure." The '125 patent states on its cover that it was issued on March 5, 2013, and names as its inventors Ming-Hong Tseng of Toufen Township, Taiwan, and Sheng Huang Jao of Jiayi, Taiwan. The '125 patent also states that the initial assignee of the '125 patent was Taiwan Semiconductor Manufacturing Co., Ltd. of Taiwan. MBIP purports to own by assignment the '125 patent. A copy of the '125 patent is attached hereto as Exhibit B.

35. The ’170 patent is entitled “Method for Stacking Devices.” The ’170 patent states on its cover that it was issued on December 18, 2012, and names as its inventors Dean Wang of Tainan, Taiwan; Chien-Hsiun Lee of Hsinchu, Taiwan; Chen-Shien Chen of Zhubei, Taiwan; Clinton Chao of Hsinchu, Taiwan; Mirng-Ji Lii of Hsinchu County, Taiwan; and Tjandra Winata Karta of Hsin-Chu County, Taiwan. The ’170 patent also states that the initial assignee of the ’170 patent was Taiwan Semiconductor Manufacturing Co., Ltd. of Hsin-Chu, Taiwan. MBIP purports to own by assignment the ’170 patent. A copy of the ’170 patent is attached hereto as Exhibit C.

36. The ’914 patent is entitled “Metal Pad Structure Over TSV to Reduce Shorting of Upper Metal Layer.” The ’914 patent states on its cover that it was issued on November 3, 2015, and names as its inventors Chung-Chuan Tseng of Hsin-Chu, Taiwan; Chia-Wei Liu of Huatan Township, Taiwan; Cindy Kuo of Zhubei, Taiwan; and Ren-Wei Xiao of Shetou Township, Taiwan. The ’914 patent also states that the initial assignee of the ’914 patent was Taiwan Semiconductor Manufacturing Co., Ltd. of Hsin-Chu, Taiwan. MBIP purports to own by assignment the ’914 patent. A copy of the ’914 patent is attached hereto as Exhibit D.

37. The ’690 patent is entitled “Metal Pad Structure Over TSV to Reduce Shorting of Upper Metal Layer.” The ’690 patent states on its cover that it was issued on December 27, 2016, and names as its inventors Chung-Chuan Tseng of Hsin-Chu, Taiwan; Chia-Wei Liu of Huatan Township, Taiwan; Cindy Kuo of Zhubei, Taiwan; and Ren-Wei Xiao of Shetou Township, Taiwan. The ’690 patent also states that the initial assignee of the ’690 patent was Taiwan Semiconductor Manufacturing Co., Ltd. of Hsin-Chu, Taiwan. MBIP purports to own by assignment the ’690 patent. A copy of the ’690 patent is attached hereto as Exhibit E.

38. The ’971 patent is entitled “Methods of Forming Metal Pad Structures Over TSVs to Reduce Shorting of Upper Metal Layers.” The ’971 patent states on its cover that it was issued on May 29, 2018, and names as its inventors Chung-Chuan Tseng of Hsin-Chu, Taiwan; Chia-Wei Liu of Zhubei, Taiwan; Fang-Ting Kuo of Zhubei, Taiwan; and Ren-Wei Xiao of Shetou Township, Taiwan. The ’971 patent also states that the initial assignee of the ’971 patent

was Taiwan Semiconductor Manufacturing Co., Ltd. of Hsin-Chu, Taiwan. MBIP purports to own by assignment the ’971 patent. A copy of the ’971 patent is attached hereto as Exhibit F.

39. The ’877 patent is entitled “Source/Drain Contact Spacers and Methods of Forming Same.” The ’877 patent states on its cover that it was issued on August 9, 2022, and names as its inventor Xusheng Wu of Hsinchu, Taiwan. The ’877 patent also states that the initial assignee of the ’877 patent was Taiwan Semiconductor Manufacturing Co., Ltd. of Hsinchu, Taiwan. MBIP purports to own by assignment the ’877 patent. A copy of the ’877 patent is attached hereto as Exhibit G.

40. The ’324 patent is entitled “Method of Manufacturing Package System.” The ’324 patent states on its cover that it was issued on February 14, 2017, and names as its inventors Wei-Cheng Wu of Hsinchu, Taiwan; Shang-Yun Hou of Jubei, Taiwan; Shin-Puu Jeng of Hsinchu, Taiwan; and Chen-Hua Yu of Hsinchu, Taiwan. The ’324 patent also states that the initial assignee of the ’324 patent was Taiwan Semiconductor Manufacturing Co., Ltd. of Taiwan. MBIP purports to own by assignment the ’324 patent. A copy of the ’324 patent is attached hereto as Exhibit H.

## DISPUTE BETWEEN SK HYNIX AND DEFENDANTS

### A. MBIP’s Acquisition of the Patents-in-Suit

41. In December 2019, Katana, an affiliate of Longhorn IP, brought an action against TSMC, including two of TSMC’s subsidiaries based in this District, in the Western District of Texas (“Katana-TSMC Action”). *See Katana*, No. 6:19-cv-00695 (W.D. Tex. filed Dec. 6, 2019).

42. In March 2020, Katana settled the Katana-TSMC Action. As part of that settlement, Longhorn IP and its affiliates entered into an IP Collaboration and Services Agreement with TSMC and its affiliates on March 13, 2020 (“March 2020 Collaboration Agreement”). Longhorn IP announced the agreement on its website on March 17, 2020. On information and belief, Mr. Fekih-Romdhane exercised control over the settlement on behalf of Katana in the Katana-TSMC Action and over the negotiation of the March 2020 Collaboration Agreement.

43. The March 2020 Collaboration Agreement includes a choice of law provision stating that the agreement "is governed by California law" and that "[a]ny dispute between the Parties with respect to this Agreement shall be resolved in the state or federal courts in Santa Clara County, California." Intell. Prop. Collaboration & Servs. Agreement § 5.1, *Taiwan Semiconductor Mfg. Co. Ltd. v. Longhorn IP LLC*, No. 5:23-cv-04265-PCP (N.D. Cal. June 28, 2024), Dkt. No. 95-1. On information and belief, the March 2020 Collaboration Agreement was signed by Mr. Fekih-Romdhane on behalf of Longhorn IP.

44. The March 2020 Collaboration Agreement required TSMC to transfer and assign five of its patents to Longhorn IP's affiliate, Trenchant. *Id.* § 3.7. On March 24, 2020, TSMC and Trenchant entered into a patent assignment agreement, assigning five TSMC patents to Trenchant pursuant to the March 2020 Collaboration Agreement. Longhorn IP announced the patent assignment to Trenchant on its website on March 25, 2020. According to Longhorn IP's news release, "[t]he acquired patents pertain to advanced semiconductor memories as well as chip manufacturing state-of-the-art technologies." Longhorn IP, "Longhorn IP Announces That Trenchant Blade Technologies LLC Has Acquired A Semiconductor Patent Portfolio" (Mar. 25, 2020), https://www.longhornip.com/news.

45. On May 8, 2020, Longhorn IP sent a letter to SK hynix Inc. alleging that "SK hynix and its affiliates" infringe "one or more" patents owned by Trenchant and offered to license the patents that Trenchant acquired from TSMC. SK hynix, Longhorn IP, and Trenchant engaged in multiple meetings, during which SK hynix consistently denied any infringement. *See* Amended Compl. ¶¶ 42-48, *SK hynix Inc. et al. v. Longhorn IP LLC et al.*, No. 5:22-cv-03915 (N.D. Cal. Sept. 21, 2022), Dkt. No. 35.

46. On July 5, 2022, SK hynix filed a complaint against Longhorn IP, Trenchant, and Hamilcar Barca (another Longhorn IP affiliate) in this District, seeking, among other things, a declaratory judgment of no infringement of the Trenchant patents. *See* Compl., *SK hynix Inc. et al. v. Longhorn IP LLC et al.*, No. 5:22-cv-03915 (N.D. Cal. July 5, 2022), Dkt. No. 1.

47. On October 18, 2022, SK hynix and Trenchant entered into a patent license agreement. Longhorn IP announced the patent license agreement in a news release on its website

on October 25, 2022. Longhorn IP, "SK Hynix and Trenchant Blade Technologies Reach Patent License Agreement" (Oct. 25, 2022), https://www.longhornip.com/post/sk-hynix-and-trenchant-blade-technologies-reach-patent-license-agreement.

48. On August 21, 2023, TSMC filed a complaint against Longhorn IP and its affiliate Hamilcar Barca in this District for breach of the March 2020 Collaboration Agreement (the "TSMC-Longhorn IP Action"). *See Taiwan Semiconductor Mfg. Co. Ltd. et al. v. Longhorn IP LLC et al.*, No. 5:23-cv-04265-PCP (N.D. Cal. Aug. 21, 2023), Dkt. No. 1. Longhorn IP and Hamilcar Barca filed counterclaims in this District after their motion to dismiss the complaint was denied. Defs.' Countercls. & Answer, *Taiwan Semiconductor Mfg. Co. Ltd. et al.*, No. 5:23-cv-04265-PCP (N.D. June 28, 2024), Dkt. No. 100. In November 2024, TSMC and Longhorn IP settled the TSMC-Longhorn IP Action.

49. As part of the settlement of the TSMC-Longhorn IP Action, Longhorn IP and TSMC renewed their Collaboration Agreement on November 19, 2024 ("November 2024 Renewed Collaboration Agreement"). Longhorn IP announced the "renewed agreement" in a news release on its website on the same day. Longhorn IP, "TSMC Signs Intellectual Property Collaboration Agreement with Longhorn IP" (Nov. 19, 2024), https://www.longhornip.com/post/tsmc-signs-intellectual-property-collaboration-agreement-with-longhorn-ip. On information and belief, the November 2024 Renewed Collaboration Agreement includes the same California choice of law provision included in the original March 2020 Collaboration Agreement. On information and belief, Mr. Fekih-Romdhane exercised control over the settlement on behalf of Longhorn IP and over the negotiation of the November 2024 Renewed Collaboration Agreement.

50. On information and belief, the November 2024 Renewed Collaboration Agreement included a provision requiring TSMC to assign certain of its U.S. patents to a Longhorn IP-affiliated entity. At the time of the November 2024 Renewed Collaboration Agreement, MBIP had not yet been formed. On information and belief, rather than having TSMC assign its patents to Trenchant—an already-existing Longhorn IP-affiliated entity that was already the owner of other memory and semiconductor fabrication patents from TSMC—

Mr. Fekih-Romdhane instead formed MBIP on January 10, 2025 to acquire the TSMC patents. On information and belief, MBIP was formed to assert the newly acquired TSMC patents against SK hynix because SK hynix has a patent license agreement with Trenchant.

51. On March 28, 2025, TSMC and MBIP entered into a patent assignment agreement assigning certain patents, including the Patents-in-Suit, to MBIP pursuant to the November 2024 Renewed Collaboration Agreement.

**B. Defendants' Patent Assertions Against SK hynix**

52. On June 11, 2025, Mr. Fekih-Romdhane sent a letter by email to Jinho Lee of SK hynix Inc. The June 11, 2025 letter stated that MBIP executed a "licensing service agreement" with Longhorn IP. The letter defined "SK hynix" to mean "SK hynix and its subsidiaries/affiliates" and alleged that "SK hynix and its subsidiaries/affiliates ('SK hynix') infringe MBIP's patented semiconductor technologies and are made using infringing fabrication methods, and thus would like to discuss whether a license is appropriate." Ex. I at 1. The letter further stated that "[w]e believe that SK hynix sells and offers to sell in the United States, and imports into the United States, integrated circuit devices that infringe one or more of the MBIP patents," and that Longhorn IP "believe[s] that SK hynix induces other companies, such as distributors, resellers and end-users, to perform one or more of these infringing acts in the United States." *Id.* The letter attached and alleged infringement of certain claims of the '608 patent, '170 patent, '125 patent, '690 patent, '971 patent, and '877 patent. The letter offered to discuss terms for SK hynix to license the referenced patents. A true and correct copy of the June 11, 2025 letter is attached as Exhibit I.

53. On information and belief, the June 11, 2025 letter appears to have been based in part on Longhorn IP's earlier May 8, 2020 assertion letter regarding the Trenchant patent portfolio, as evidenced by the date "May 8, 2020" in the header of multiple pages. *See* Exhibit I at 2-4.

54. On October 5, 2025, Longhorn IP announced on its website that MBIP retained Cherian LLP "to perform legal services on its behalf." In the same news release, Longhorn IP stated that "[p]reviously, Mago announced that it had acquired a portfolio of patents related to

cutting-edge semiconductor technologies developed by Taiwan Semiconductor Manufacturing Company Limited ('TSMC')." Longhorn IP, "Mago Barca IP retains Law Firm Cherian LLP" (Oct. 5, 2025), https://www.longhornip.com/post/mago-barca-ip-retains-law-firm-cherian-llp.

55. On October 13, 2025, Jeong Muk Kim of SK hynix Inc. received a letter from Thomas Dunham from Cherian LLP stating that "[w]e write to advise you that Cherian LLP represents Mago Barca IP LLC (MBIP) in connection with the assertion of the portfolio of patents acquired from [TSMC] …." The letter references the June 11, 2025 letter as "documenting its belief SK hynix sells and offers to sell in the United States, and imports into the United States, integrated circuit devices that infringe one or more MBIP patents." Ex. J at 1. A true and correct copy of the October 13, 2025 letter is attached as Exhibit J.

56. On May 6, 2026, Mr. Kim of SK hynix Inc. received a letter from Mr. Dunham from Cherian LLP, stating that "MBIP has further reviewed its portfolio of patents and discovered SK hynix products and fabrication technologies infringe: One or more claims of U.S. Patent No. 9,177,914 …." Ex. K at 1. A true and correct copy of the May 6, 2026 letter is attached as Exhibit K.

57. On May 28, 2026, Mr. Kim of SK hynix Inc. received a letter from Mr. Dunham from Cherian LLP, stating that "MBIP has further reviewed its portfolio of patents and discovered SK hynix products and fabrication technologies infringe: One or more claims of U.S. Patent No. 9,570,324 …." Ex. L at 1. A true and correct copy of the May 28, 2026 letter is attached as Exhibit L.

58. Representatives of Longhorn IP and MBIP, including Mr. Fekih-Romdhane, met with representatives of SK hynix Inc. in five videoconference meetings on October 13, 2025, January 14, 2026, April 14, 2026, June 23, 2026, and August 12, 2026. Robert Harkins from Cherian LLP attended the January 14, 2026 meeting on behalf of MBIP. According to his biography page on Cherian Harkins Dunham LLP, https://chdlaw.com/wp-content/uploads/CHD_bio_Harkins26-1.pdf (last visited Oct. 7, 2026), Mr. Harkins is the firm's Managing Partner based in the San Francisco Bay Area office.

59. Throughout these multiple discussions, SK hynix consistently denied any infringement of the Patents-in-Suit while Defendants continued to insist that SK hynix needed to take a license at unreasonable rates. SK hynix has reasonably concluded that further discussions concerning the merits of the infringement allegations would be unproductive. Accordingly, discussions have failed to resolve the infringement allegations presented by Longhorn IP and MBIP.

## COUNT ONE

### (Declaration of Non-Infringement of the ’608 Patent)

60. SK hynix restates and incorporates by reference the allegations in paragraphs 1 through 59 of this Complaint as if fully set forth herein.

61. Longhorn IP and MBIP have alleged and continue to allege that “SK hynix HBM devices” infringe at least claim 1 of the ’608 patent.

62. The ’608 patent has three independent claims (claims 1, 2, and 10). Independent claim 1 is representative and reads as follows:

| Element | Claim Language |
|---|---|
| Pre | An integrated circuit structure, comprising: |
| (a) | a semiconductor substrate; |
| (b) | a through-silicon via (TSV) extending into the semiconductor substrate; |
| (c) | a pad formed over the semiconductor substrate and spaced apart from the TSV; and |
| (d) | an interconnect structure formed over the semiconductor substrate and electrically connecting the TSV and the pad; |
| (e) | wherein the interconnect structure comprises |
| (f) | an upper portion which is formed on the pad and extends to electrically connect the TSV; and |
| (g) | a lower portion outside the TSV and adjacent and directly in contact with the pad. |

63. SK hynix has not infringed and does not infringe any valid claim of the ’608 patent directly or indirectly, either literally or under the doctrine of equivalents. All generations

of the accused SK hynix HBM products ("'608 Products") do not infringe any valid claim of the '608 patent. By way of illustration, claims of the '608 patent are invalid under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.*, including but not limited to §§ 102 and 103. As a further example, SK hynix does not infringe the '608 patent at least because the '608 Products do not employ, incorporate, or otherwise make use of, for example, the "interconnect structure formed over the semiconductor substrate and electrically connecting the TSV and the pad; wherein the interconnect structure comprises an upper portion which is formed on the pad and extends to electrically connect the TSV; and a lower portion outside the TSV and adjacent and directly in contact with the pad" as required by claim 1, "an interconnect structure formed over the semiconductor substrate and electrically connecting the TSV and the pad; wherein the interconnect structure comprises an upper portion formed on the pad and a lower portion adjacent to the pad, and the upper portion extends to electrically connect the TSV; and wherein the lower portion of the interconnect structure is a ring surrounding and directly in contact with the pad" as required by claim 2 and its dependent claims, and "an interconnect structure formed over the first passivation layer and electrically connecting the TSV and the pad; wherein the interconnect structure comprises an upper portion which is formed directly on the pad and extends laterally into direct electrical connection with the TSV; and a lower portion which extends from the upper portion toward the substrate, is located outside the TSV, and is in direct contact with the pad" as required by claim 10 and its dependent claims. The '608 Products do not have a claimed interconnect structure separate from a pad.

64. A substantial, immediate, and real controversy exists between SK hynix, on the one hand, and Longhorn IP and MBIP, on the other hand, regarding whether SK hynix infringes the '608 patent by making, using, selling, and/or offering for sale the '608 Products in the United States, by importing the '608 Products into the United States, or by inducing others to perform one or more of these allegedly infringing acts. A judicial declaration is necessary to determine the parties' respective rights regarding the '608 patent.

65. SK hynix seeks a judgment declaring that SK hynix has not infringed and does not infringe, either literally or under the doctrine of equivalents, any claims of the ’608 patent, either directly or indirectly.

**COUNT TWO**

**(Declaration of Invalidity of the ’608 Patent)**

66. SK hynix restates and incorporates by reference the allegations in paragraphs 1 through 65 of this Complaint as if fully set forth herein.

67. Claims of the ’608 patent are invalid under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.*, including but not limited to §§ 102 and 103. For example, at least under Defendants’ theory of infringement, claim 1 is invalid under § 102 and/or § 103 in view of the prior art, including but not limited to U.S. Patent Publication No. 2008/0315433 to Chen et al., and the knowledge of a person of ordinary skill in the art.

68. A substantial, immediate, and real controversy exists between SK hynix, on the one hand, and Longhorn IP and MBIP, on the other hand, regarding whether claims of the ’608 patent are invalid. A judicial declaration is necessary to determine the parties’ respective rights regarding the ’608 patent.

**COUNT THREE**

**(Declaration of Non-Infringement of the ’125 Patent)**

69. SK hynix restates and incorporates by reference the allegations in paragraphs 1 through 68 of this Complaint as if fully set forth herein.

70. Longhorn IP and MBIP have alleged and continue to allege that “SK hynix HBM devices” infringe at least claim 1 of the ’125 patent.

71. The ’125 patent has two independent claims (claims 1 and 11). Independent claim 1 is representative and reads as follows:

| **Element** | **Claim Language** |
|---|---|
| Pre | An integrated circuit structure, comprising: |
| (a) | a semiconductor substrate; |
| (b) | a through-silicon via (TSV) extending into the semiconductor substrate; |
| (c) | a pad formed over the semiconductor substrate and spaced apart from the TSV; |
| (d) | a dielectric layer formed over the semiconductor substrate and surrounding the pad; and |
| (e) | an interconnect structure formed over the dielectric layer and electrically connecting the TSV and the pad; |
| (f) | wherein the interconnect structure comprises an upper portion which is formed directly on the pad and extends laterally into direct electrical connection with the TSV; and |
| (g) | a lower portion outside the TSV, and extending downwardly from the upper portion into the dielectric layer to be in direct contact with the dielectric layer and to be co-elevational with the pad. |

72. SK hynix has not infringed and does not infringe any valid claim of the ’125 patent directly or indirectly, either literally or under the doctrine of equivalents. All generations of the accused SK hynix HBM products (“’125 Products”) do not infringe any valid claim of the ’125 patent. By way of illustration, claims of the ’125 patent are invalid under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.*, including but not limited to §§ 102 and 103. As a further example, SK hynix does not infringe the ’125 patent at least because the ’125 Products do not employ, incorporate, or otherwise make use of, for example, the “interconnect structure formed over the dielectric layer and electrically connecting the TSV and the pad; wherein the interconnect structure comprises an upper portion which is formed directly on the pad and extends laterally into direct electrical connection with the TSV; and a lower portion outside the TSV, and extending downwardly from the upper portion into the dielectric layer to be in direct contact with the dielectric layer and to be co-elevational with the pad” as required by claim 1 and its dependent claims and the “interconnect structure formed over the semiconductor substrate and electrically connecting the TSV and the pad; wherein the interconnect structure comprises an upper portion formed on the pad and a lower portion adjacent to the pad, and the upper portion extends to electrically connect the TSV; and wherein the lower portion of the

interconnect structure is a ring surrounding the pad" as required by claim 11. The '125 Products do not have a claimed interconnect structure separate from a pad.

73. A substantial, immediate, and real controversy exists between SK hynix, on the one hand, and Longhorn IP and MBIP, on the other hand, regarding whether SK hynix infringes the '125 patent by making, using, selling, and/or offering for sale the '125 Products in the United States, by importing the '125 Products into the United States, or by inducing others to perform one or more of these allegedly infringing acts. A judicial declaration is necessary to determine the parties' respective rights regarding the '125 patent.

74. SK hynix seeks a judgment declaring that SK hynix has not infringed and does not infringe, either literally or under the doctrine of equivalents, any claims of the '125 patent, either directly or indirectly.

**COUNT FOUR**

**(Declaration of Invalidity of the '125 Patent)**

75. SK hynix restates and incorporates by reference the allegations in paragraphs 1 through 74 of this Complaint as if fully set forth herein.

76. Claims of the '125 patent are invalid under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.*, including but not limited to §§ 102 and 103. For example, at least under Defendants' theory of infringement, claim 1 is invalid under § 102 and/or § 103 in view of the prior art, including but not limited to U.S. Patent Publication No. 2011/0034027 to Kuo et al., and the knowledge of a person of ordinary skill in the art.

77. A substantial, immediate, and real controversy exists between SK hynix, on the one hand, and Longhorn IP and MBIP, on the other hand, regarding whether claims of the '125 patent are invalid. A judicial declaration is necessary to determine the parties' respective rights regarding the '125 patent.

**COUNT FIVE**

**(Declaration of Non-Infringement of the '914 Patent)**

78. SK hynix restates and incorporates by reference the allegations in paragraphs 1 through 77 of this Complaint as if fully set forth herein.

79. Longhorn IP and MBIP have alleged and continue to allege that "SK hynix HBM devices" infringe at least claim 1 of the '914 patent.

80. The '914 patent has three independent claims (claims 1, 18, and 19). Independent claim 1 is representative and reads as follows:

| **Element** | **Claim Language** |
|---|---|
| Pre | A semiconductor die for bonding with another die, comprising: |
| (a) | a through substrate via (TSV) formed in a substrate of the semiconductor die; and |
| (b) | a slotted metal pad formed directly over the TSV, |
| (c) | wherein the slotted metal pad has a top surface area larger than a top surface area of the TSV, |
| (d) | wherein the slotted metal pad has a plurality of metal bars in a first direction, and |
| (e) | wherein slots between the plurality of metal bars are filled with a dielectric material to form dielectric bars. |

81. SK hynix has not infringed and does not infringe any valid claim of the '914 patent directly or indirectly, either literally or under the doctrine of equivalents. All generations of the accused SK hynix HBM products ("'914 Products") do not infringe any valid claim of the '914 patent. By way of illustration, the '914 patent is invalid under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.*, including but not limited to §§ 102 and 103. For example, at least under Defendants' theory of infringement, each claim is invalid under § 102 and/or § 103 in view of the prior art, including but not limited to Japanese Patent Application Publication No. 2011-003645 to Fujisawa, U.S. Patent No. 8,736,067 to Hirano et al., and the knowledge of a person of ordinary skill in the art. As a further example, with respect to at least the SK hynix HBM3, HBM3E, HBM4, and HBM4E products, those products do not employ, incorporate, or otherwise make use of, for example, the "slotted metal pad formed directly over the TSV … wherein the slotted metal pad has a plurality of metal bars in a first direction, and wherein slots between the plurality of metal bars are filled with a [dielectric/solid dielectric] material to form dielectric bars" as required by claim 1 and every other claim of the '914 patent.

The SK hynix HBM3, HBM3E, HBM4, and HBM4E products do not have a slotted metal pad that has the claimed dielectric bars.

82. A substantial, immediate, and real controversy exists between SK hynix, on the one hand, and Longhorn IP and MBIP, on the other hand, regarding whether SK hynix infringes the ’914 patent by making, using, selling, and/or offering for sale the ’914 Products in the United States, by importing the ’914 Products into the United States, or by inducing others to perform one or more of these allegedly infringing acts. A judicial declaration is necessary to determine the parties’ respective rights regarding the ’914 patent.

83. SK hynix seeks a judgment declaring that SK hynix has not infringed and does not infringe, either literally or under the doctrine of equivalents, any claims of the ’914 patent, either directly or indirectly.

**COUNT SIX**

**(Declaration of Invalidity of the ’914 Patent)**

84. SK hynix restates and incorporates by reference the allegations in paragraphs 1 through 83 of this Complaint as if fully set forth herein.

85. Claims of the ’914 patent are invalid under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.*, including but not limited to §§ 102 and 103. For example, at least under Defendants’ theory of infringement, each claim is invalid under § 102 and/or § 103 in view of the prior art, including but not limited to Japanese Patent Application Publication No. 2011-003645 to Fujisawa, U.S. Patent No. 8,736,067 to Hirano et al., and the knowledge of a person of ordinary skill in the art.

86. A substantial, immediate, and real controversy exists between SK hynix, on the one hand, and Longhorn IP and MBIP, on the other hand, regarding whether the ’914 patent is invalid. A judicial declaration is necessary to determine the parties’ respective rights regarding the ’914 patent.

## COUNT SEVEN

### (Declaration of Non-Infringement of the ’690 Patent)

87. SK hynix restates and incorporates by reference the allegations in paragraphs 1 through 86 of this Complaint as if fully set forth herein.

88. Longhorn IP and MBIP have alleged and continue to allege that “SK hynix HBM devices” infringe at least claim 1 of the ’690 patent.

89. The ’690 patent has three independent claims (claims 1, 8, and 16). Independent claim 1 is representative and reads as follows:

| **Element** | **Claim Language** |
|---|---|
| Pre | A method of forming interconnect structures over a through substrate via (TSV) on a substrate, comprising steps of: |
| (a) | providing the substrate with the TSV; |
| (b) | forming a dielectric layer over the TSV; |
| (c) | forming openings in the dielectric layer, wherein the openings are connected and expose portions of the TSV, wherein there are dielectric structures of the dielectric layer amongst the openings; |
| (d) | depositing a diffusion barrier layer to line the openings; |
| (e) | depositing a conductive layer to gap-fill the openings; and |
| (f) | planarizing the conductive layer and the diffusion barrier layer to remove the conductive layer and the diffusion barrier layer outside the openings to form a slotted metal pad, wherein the step of planarizing does not cause significant dishing effect near a center of the slotted metal pad. |

90. SK hynix has not infringed and does not infringe any valid claim of the ’690 patent directly or indirectly, either literally or under the doctrine of equivalents. All generations of the accused SK hynix HBM products (“’690 Products”) do not infringe any valid claim of the ’690 patent. By way of illustration, the ’690 patent is invalid under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.*, including but not limited to §§ 102 and 103. For example, at least under Defendants’ theory of infringement, each claim is invalid under § 102 and/or § 103 in view of the prior art, including but not limited to U.S. Patent No. 8,836,109 to Yun et al., Japanese Patent Application Publication No. 2011-003645 to Fujisawa, U.S. Patent No. 8,736,067 to Hirano et al., and the knowledge of a person of ordinary skill in the art. As a

further example, with respect to at least the SK hynix HBM3, HBM3E, HBM4, and HBM4E products, those products do not employ, incorporate, or otherwise make use of, for example, "forming openings in the dielectric layer, wherein the openings are connected and expose portions of the TSV, wherein there are dielectric structures of the dielectric layer amongst the openings" as required by claim 1 and its dependent claims, "patterning the dielectric structure to have slot shaped openings exposing portions of the TSV" as required by claim 8 and its dependent claims, and "patterning the dielectric structure to include a pattern, the pattern defining a slotted metal pad pattern, wherein the slotted metal pad pattern includes a series of parallel slots running in a first direction" as required by claim 16 and its dependent claims. The SK hynix HBM3, HBM3E, HBM4, and HBM4E products do not have dielectric structures amongst the claimed openings and dielectric structures including slot shaped openings or a pattern of a series of parallel slots.

91. A substantial, immediate, and real controversy exists between SK hynix, on the one hand, and Longhorn IP and MBIP, on the other hand, regarding whether SK hynix infringes the '690 patent by making, using, selling, and/or offering for sale the '690 Products in the United States, by importing the '690 Products into the United States, or by inducing others to perform one or more of these allegedly infringing acts. A judicial declaration is necessary to determine the parties' respective rights regarding the '690 patent.

92. SK hynix seeks a judgment declaring that SK hynix has not infringed and does not infringe, either literally or under the doctrine of equivalents, any claims of the '690 patent, either directly or indirectly.

## <u>COUNT EIGHT</u>

### (Declaration of Invalidity of the '690 Patent)

93. SK hynix restates and incorporates by reference the allegations in paragraphs 1 through 92 of this Complaint as if fully set forth herein.

94. Claims of the '690 patent are invalid under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.*, including but not limited to §§ 102 and 103. For example, at least under Defendants' theory of infringement, each claim is invalid under § 102 and/or § 103 in

view of the prior art, including but not limited to U.S. Patent No. 8,836,109 to Yun et al., Japanese Patent Application Publication No. 2011-003645 to Fujisawa, U.S. Patent No. 8,736,067 to Hirano et al., and the knowledge of a person of ordinary skill in the art.

95. A substantial, immediate, and real controversy exists between SK hynix, on the one hand, and Longhorn IP and MBIP, on the other hand, regarding whether the ’690 patent is invalid. A judicial declaration is necessary to determine the parties’ respective rights regarding the ’690 patent.

**COUNT NINE**

**(Declaration of Non-Infringement of the ’971 Patent)**

96. SK hynix restates and incorporates by reference the allegations in paragraphs 1 through 95 of this Complaint as if fully set forth herein.

97. Longhorn IP and MBIP have alleged and continue to allege that “SK hynix HBM devices” infringe at least claim 1 of the ’971 patent.

98. The ’971 patent has three independent claims (claims 1, 10, and 16). Independent claim 1 is representative and reads as follows:

| Element | Claim Language |
|---|---|
| Pre | A semiconductor device including a semiconductor die for bonding with another die, the semiconductor die comprising: |
| (a) | a through substrate via (TSV) formed in a substrate of the semiconductor die; and |
| (b) | a pad formed directly over the TSV, |
| (c) | wherein the pad comprises a plurality of metal bars extending in a first direction, |
| (d) | the plurality of metal bars being separated by a plurality of dielectric bars extending in the first direction, |
| (e) | the plurality of metal bars and the plurality of dielectric bars having an alternating pattern in a region directly over the TSV. |

99. SK hynix has not infringed and does not infringe any valid claim of the ’971 patent directly or indirectly, either literally or under the doctrine of equivalents. All generations of the accused SK hynix HBM products (“’971 Products”) do not infringe any valid claim of the

’971 patent. By way of illustration, the ’971 patent is invalid under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.*, including but not limited to §§ 102 and 103. For example, at least under Defendants’ theory of infringement, each claim is invalid under § 102 and/or § 103 in view of the prior art, including but not limited to Japanese Patent Application Publication No. 2011-003645 to Fujisawa, U.S. Patent No. 8,736,067 to Hirano et al., and the knowledge of a person of ordinary skill in the art. As a further example, with respect to at least the SK hynix HBM3, HBM3E, HBM4, and HBM4E products, those products do not employ, incorporate, or otherwise make use of, for example, the “pad formed directly over the TSV, wherein the pad comprises a plurality of metal bars extending in a first direction, the plurality of metal bars being separated by a plurality of dielectric bars extending in the first direction” as required by claim 1 and its dependent claims, the “metal pad formed directly over the TSV, the metal pad comprising a plurality of apertures formed therein, the plurality of apertures being completely filled by a dielectric material” as required by claim 10 and its dependent claims, and the “metal pad formed directly over the TSV, wherein the metal pad comprises a first plurality of metal bars extending in a first direction … and dielectric bars between each of the first plurality of metal bars” as required by claim 16 and its dependent claims. The SK hynix HBM3, HBM3E, HBM4, and HBM4E products do not have a pad or a metal pad that has the claimed dielectric bars or apertures.

100. A substantial, immediate, and real controversy exists between SK hynix, on the one hand, and Longhorn IP and MBIP, on the other hand, regarding whether SK hynix infringes the ’971 patent by making, using, selling, and/or offering for sale the ’971 Products in the United States, by importing the ’971 Products into the United States, or by inducing others to perform one or more of these allegedly infringing acts. A judicial declaration is necessary to determine the parties’ respective rights regarding the ’971 patent.

101. SK hynix seeks a judgment declaring that SK hynix has not infringed and does not infringe, either literally or under the doctrine of equivalents, any claims of the ’971 patent, either directly or indirectly.

**COUNT TEN**

**(Declaration of Invalidity of the ’971 Patent)**

102. SK hynix restates and incorporates by reference the allegations in paragraphs 1 through 101 of this Complaint as if fully set forth herein.

103. Claims of the ’971 patent are invalid under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.*, including but not limited to §§ 102 and 103. For example, at least under Defendants’ theory of infringement, each claim is invalid under § 102 and/or § 103 in view of the prior art, including but not limited to Japanese Patent Application Publication No. 2011-003645 to Fujisawa, U.S. Patent No. 8,736,067 to Hirano et al., and the knowledge of a person of ordinary skill in the art.

104. A substantial, immediate, and real controversy exists between SK hynix, on the one hand, and Longhorn IP and MBIP, on the other hand, regarding whether the ’971 patent is invalid. A judicial declaration is necessary to determine the parties’ respective rights regarding the ’971 patent.

**COUNT ELEVEN**

**(Declaration of Non-Infringement of the ’170 Patent)**

105. SK hynix restates and incorporates by reference the allegations in paragraphs 1 through 104 of this Complaint as if fully set forth herein.

106. Longhorn IP and MBIP have alleged and continue to allege that “SK hynix HBM devices” infringe at least claim 1 of the ’170 patent.

107. The ’170 patent has two independent claims (claims 1 and 10). Independent claim 1 is representative and reads as follows:

| Element | Claim Language |
|---|---|
| Pre | A method for fabricating a semiconductor device, comprising: |
| (a) | providing a first device including a first through-silicon via (TSV) structure; |
| (b) | forming a first coating material over the first device, wherein the first coating material continuously extends over the first device and covers the first TSV structure; |
| (c) | providing a second device over the first device and within the first coating material, wherein the second device includes a second TSV structure and a plurality of conductive bumps, wherein providing the second device includes positioning the plurality of conductive bumps within the first coating material; |
| (d) | forming a second coating material over the second device, wherein the second coating material continuously extends over the second device and covers the second TSV structure; |
| (e) | providing a third device over the second coating material, wherein the third device includes a third TSV structure; |
| (f) | pre-treating the first and second coating materials; and |
| (g) | thereafter, curing the first and second coating materials in a same process. |

108. SK hynix has not infringed and does not infringe any valid claim of the ’170 patent directly or indirectly, either literally or under the doctrine of equivalents. All generations of the accused SK hynix HBM products (“’170 Products”) do not infringe any valid claim of the ’170 patent. By way of illustration, claims of the ’170 patent are invalid under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.*, including but not limited to §§ 102 and 103. As a further example, SK hynix does not infringe the ’170 patent at least because the ’170 Products do not employ, incorporate, or otherwise make use of, for example, the “forming a first coating material over the first device, wherein the first coating material continuously extends over the first device and covers the first TSV structure” as required by claim 1 and every other claim of the ’170 patent. Rather, the ’170 Products are made with a process that does not apply a coating material over the lower device.

109. A substantial, immediate, and real controversy exists between SK hynix, on the one hand, and Longhorn IP and MBIP, on the other hand, regarding whether SK hynix infringes the ’170 patent by making, using, selling, and/or offering for sale the ’170 Products in the United States, by importing the ’170 Products into the United States, or by inducing others to

perform one or more of these allegedly infringing acts. A judicial declaration is necessary to determine the parties' respective rights regarding the '170 patent.

110. SK hynix seeks a judgment declaring that SK hynix has not infringed and does not infringe, either literally or under the doctrine of equivalents, any claims of the '170 patent, either directly or indirectly.

**COUNT TWELVE**

**(Declaration of Invalidity of the '170 Patent)**

111. SK hynix restates and incorporates by reference the allegations in paragraphs 1 through 110 of this Complaint as if fully set forth herein.

112. Claims of the '170 patent are invalid under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.*, including but not limited to §§ 102 and 103. For example, at least under Defendants' theory of infringement, claim 1 is invalid under § 102 and/or § 103 in view of the prior art, including but not limited to U.S. Patent Publication No. 2005/0189639 to Tanie et al., and the knowledge of a person of ordinary skill in the art.

113. A substantial, immediate, and real controversy exists between SK hynix, on the one hand, and Longhorn IP and MBIP, on the other hand, regarding whether claims of the '170 patent are invalid. A judicial declaration is necessary to determine the parties' respective rights regarding the '170 patent.

**COUNT THIRTEEN**

**(Declaration of Non-Infringement of the '877 Patent)**

114. SK hynix restates and incorporates by reference the allegations in paragraphs 1 through 113 of this Complaint as if fully set forth herein.

115. Longhorn IP and MBIP have alleged and continue to allege that SK hynix DRAM devices infringe at least claim 1 of the '877 patent.

116. The '877 patent has three independent claims (claims 1, 10, and 16). Independent claim 1 is representative and reads as follows:

| Element | Claim Language |
|---|---|
| Pre | An integrated circuit device comprising: |
| (a) | a gate structure disposed over a substrate; |
| (b) | a source/drain feature disposed adjacent to the gate structure; |
| (c) | a source/drain contact disposed over the source/drain feature, wherein the source/drain contact extends through an interlayer dielectric layer and a contact etch stop layer to the source/drain feature; and |
| (d) | a source/drain contact spacer disposed between sidewalls of the source/drain contact and the interlayer dielectric layer, wherein a portion of the contact etch stop layer is disposed between the source/drain contact spacer and the source/drain feature, such that the source/drain contact spacer does not physically contact the source/drain feature. |

117. SK hynix has not infringed and does not infringe any valid claim of the ’877 patent directly or indirectly, either literally or under the doctrine of equivalents. All generations of the accused SK hynix HBM and DRAM products ("’877 Products") do not infringe any valid claim of the ’877 patent. By way of illustration, claims of the ’877 patent are invalid under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.*, including but not limited to §§ 102 and 103. As a further example, SK hynix does not infringe the ’877 patent at least because the ’877 Products do not employ, incorporate, or otherwise make use of, for example, "a contact etch stop layer . . . wherein a portion of the contact etch stop layer is disposed between the source/drain contact spacer and the source/drain feature" as required by claim 1 and its dependent claims, "a first contact etch stop layer . . . wherein the first contact etch stop layer is disposed between and separates the source/drain contact dielectric liner layer from a top surface of the source/drain" as required by claim 10 and its dependent claims, and "a first contact etch stop layer over first sidewalls of the first gate structure, second sidewalls of the second gate structure, and a top surface of the epitaxial source/drain" as required by claim 16 and its dependent claims. Rather, the ’877 products use a different manufacturing process that neither requires nor includes the claimed contact etch stop layer.

118. A substantial, immediate, and real controversy exists between SK hynix, on the one hand, and Longhorn IP and MBIP, on the other hand, regarding whether SK hynix infringes the ’877 patent by making, using, selling, and/or offering for sale the ’877 Products in the

United States, by importing the ’877 Products into the United States, or by inducing others to perform one or more of these allegedly infringing acts. A judicial declaration is necessary to determine the parties’ respective rights regarding the ’877 patent.

119. SK hynix seeks a judgment declaring that SK hynix has not infringed and does not infringe, either literally or under the doctrine of equivalents, any claims of the ’877 patent, either directly or indirectly.

**COUNT FOURTEEN**

**(Declaration of Invalidity of the ’877 Patent)**

120. SK hynix restates and incorporates by reference the allegations in paragraphs 1 through 119 of this Complaint as if fully set forth herein.

121. Claims of the ’877 patent are invalid under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.*, including but not limited to §§ 102 and 103. For example, at least under Defendants’ theory of infringement, claim 1 is invalid under § 102 and/or § 103 in view of the prior art, including but not limited to U.S. Patent No. 8,461,649 to Tsao et al., and the knowledge of a person of ordinary skill in the art.

122. A substantial, immediate, and real controversy exists between SK hynix, on the one hand, and Longhorn IP and MBIP, on the other hand, regarding whether claims of the ’877 patent are invalid. A judicial declaration is necessary to determine the parties’ respective rights regarding the ’877 patent.

**COUNT FIFTEEN**

**(Declaration of Non-Infringement of the ’324 Patent)**

123. SK hynix restates and incorporates by reference the allegations in paragraphs 1 through 122 of this Complaint as if fully set forth herein.

124. Longhorn IP and MBIP have alleged and continue to allege that SK hynix HBM devices “for use in advanced 2.5D package architectures” infringe at least claim 1 of the ’324 patent.

125. The ’324 patent has three independent claims (claims 1, 11, and 20). Independent claim 1 is representative and reads as follows:

| Element | Claim Language |
|---|---|
| Pre | A method of manufacturing a package system, the method comprising: |
| (a) | forming a first interconnect structure over a first surface of a first substrate; |
| (b) | forming at least one first through silicon via (TSV) structure in the first substrate; |
| (c) | disposing the first substrate over a carrier with the first surface facing the carrier; |
| (d) | depositing a molding compound material over the carrier and around the first substrate; |
| (e) | forming at least one through via in the molding compound material, wherein the at least one through via is offset from the first substrate in a direction parallel to the first surface; |
| (f) | forming a second interconnect structure over a second surface of the first substrate; |
| (g) | removing the carrier to expose the first interconnect structure over the first surface of the first substrate; and |
| (h) | disposing a first integrated circuit over the first surface of the first substrate, the first integrated circuit being electrically coupled with the at least one first TSV structure through the first interconnect structure and connecting bumps. |

126. SK hynix has not infringed and does not infringe any valid claim of the ’324 patent directly or indirectly, either literally or under the doctrine of equivalents. All generations of the accused SK hynix HBM products (“’324 Products”) do not infringe any valid claim of the ’324 patent. By way of illustration, SK hynix does not make, use, or sell any 2.5D package products, and thus does not perform any of the method steps of the claims of the ’324 patent. As a further example, to the extent Defendants contend that TSMC performs the steps of the method claims of the ’324 patent, TSMC is licensed, as set forth in the March 28, 2025 MBIP-TSMC Patent Assignment Agreement.

127. A substantial, immediate, and real controversy exists between SK hynix, on the one hand, and Longhorn IP and MBIP, on the other hand, regarding whether SK hynix infringes the ’324 patent by making, using, selling, and/or offering for sale the ’324 Products in the United States, by importing the ’324 Products into the United States, or by inducing others to

perform one or more of these allegedly infringing acts. A judicial declaration is necessary to determine the parties' respective rights regarding the '324 patent.

128. SK hynix seeks a judgment declaring that SK hynix has not infringed and does not infringe, either literally or under the doctrine of equivalents, any claims of the '324 patent, either directly or indirectly.

## PRAYER FOR RELIEF

WHEREFORE, SK hynix prays for judgment and relief as follows:

A. Declaring that SK hynix has not infringed and is not infringing any valid claims of the Patents-in-Suit;

B. Declaring that claims of the '608, '125, '914, '690, '971, '170, and '877 patents are invalid;

C. Permanently enjoining Defendants and all those acting through or for them, directly and indirectly, from asserting the Patents-in-Suit against any third party based on any alleged use of SK hynix's accused products;

D. Declaring that judgment be entered in favor of SK hynix and against Defendants on each of SK hynix's claims;

E. Finding that this is an exceptional case under 35 U.S.C. § 285;

F. Awarding SK hynix its costs, expenses, and attorneys' fees in connection with this action; and

G. Such further and additional relief as the Court deems just and proper.

## JURY DEMAND

SK hynix demands a jury trial on all issues and claims so triable.

Dated: October 8, 2026

Respectfully submitted,

*/s/ Alice J. Ahn*

Alice J. Ahn (SBN 271399)
alice.ahn@wilmerhale.com
**WILMER CUTLER PICKERING**
**HALE AND DORR LLP**
50 California Street

San Francisco, California 94111
Telephone: (628) 235-1000

Mark D. Selwyn (SBN 244180)
mark.selwyn@wilmerhale.com
**WILMER CUTLER PICKERING**
**HALE AND DORR LLP**
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6100

Joseph Mueller (*pro hac vice* forthcoming)
joseph.mueller@wilmerhale.com
**WILMER CUTLER PICKERING**
**HALE AND DORR LLP**
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000

Christopher R. Noyes (*pro hac vice* forthcoming)
christopher.noyes@wilmerhale.com
**WILMER CUTLER PICKERING**
**HALE AND DORR LLP**
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800

*Counsel for Plaintiffs SK hynix Inc. and SK hynix America Inc.*